## THE MARY.

### WOODARD v. UNITED STATES.
### No. 2765.

Circuit Court of Appeals, First Circuit.

Jan. 31, 1933.

Essex S. Abbott, of Boston, Mass. (Joseph V. Carroll, of Boston, Mass., on the brief), for appellant.

Ellen L. Buckley, Asst. U. S. Atty., of Boston, Mass. (Frederick H. Tarr, U. S. Atty., of Boston, Mass., on the brief), for the United States.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

BINGHAM, Circuit Judge.

This is a libel filed in the District Court for Massachusetts on December 9, 1931, amended May 30, 1932, against the American gas screw Mary, licensed November 20, 1930, to engage in the cod and mackerel fisheries for one year from that day, in a cause of forfeiture and penalties, civil and maritime.

As a first ground of forfeiture, the libel alleged that on the 5th day of November, 1931, Charles A. Huckins of the United States Coast Guard, in charge of picket boat No. 2335, duly authorized in the premises, seized the vessel in the navigable waters of the United States within the District of Massachusetts as forfeited to the United States and to secure payment of penalties for violation of its laws; that the vessel is now in the custody of the collector of customs at Boston; that John Brown was the owner of record of the vessel, and Fred Woodard its master; that on November 4 and 5, 1931, the vessel, being licensed in the cod and mackerel fisheries, was unlawfully employed at York, in the state of Maine, by her master in a trade other than that for which she was licensed, in that she was employed in the trade and traffic of unlawfully importing and bringing into the United States at York intoxicating liquor and there unlading approximately 564 sacks of intoxicating liquor; and that by reason thereof, and by virtue of section 4377 of the Revised Statutes (46 USCA § 325), the vessel became liable to forfeiture. As the second ground it is alleged that on the night of November 4 and 5, 1931, after 5 o'clock of November 4, and before 8 o'clock of November 5, the vessel, licensed as aforesaid, carried into York, in the state of Maine, approximately 564 sacks of intoxicating liquor, the cargo arriving from a foreign port; that said liquor was of the value of more than $500, and was unlawfully unladen at night at York without a special license granted by the collector of customs; and that by reason thereof, and by virtue of sections 450 and 453 of the Tariff Act of 1930 (19 USCA §§ 1450, 1453), the vessel became liable to forfeiture. There were two further grounds of forfeiture

alleged in the libel, but we find it unnecessary to refer to them.

December 16, 1931, Woodard, the vessel's master and bailee for the owner, filed a claim of ownership and an answer in which he admitted that the vessel was licensed in the cod and mackerel fisheries, but denied the other charges in the libel. A trial was had before the District Court on June 13, 1932. The claimant presented no evidence.

June 29, 1932, a decree was entered sustaining the libel, and, inasmuch as the vessel had been released on bond in the sum of $3,000, it was further ordered that the claimant pay to the United States the sum of $3,-000, the value of the vessel as determined by appraisers appointed by the court, said sum to be paid in lieu of the forfeiture of the vessel under sections 450 and 453 of the Tariff Act of 1930. It is from this decree that this appeal is taken.

The errors assigned, so far as they relate to the grounds of forfeiture here considered, are: (1) That the vessel seized in the Merrimack river was not the one that landed the liquor at York, Me.; (2) that the testimony of McKenna, a customs agent, was improperly received; (3) that there is no evidence from which it could be found (a) that the boat was violating her license at the time of the seizure; (b) that the liquor was of foreign origin; (c) that the value of the liquor exceeded $500; and (4) that the boat was not violating the law at the time it was apprehended and its seizure was unlawful.

The evidence was that, on the night of November 4, 1931, between 9 and 12 o'clock, Weaver and England, prohibition agents for the Southern Division of Maine, Sheriff Ellis, and Police Officer Sullivan, with others, went to an estate in York about 600 yards from York river and concealed themselves in the bushes; that they had received information that liquor was to be landed there that night; that, after arriving there, they heard sounds of boats, and about midnight seized a truck loaded with sacks of liquor as it came up from the river; that thereafter Weaver, Ellis, and Sullivan went to the shore from which the truck came; that they had with them a beam light and a shotgun; that, when they reached the shore, Weaver took the light, and he and Ellis continued to the water's edge; that the tide was low, and that the channel was 75 to 100 yards wide; that with the aid of the light they saw sacks piled on the shore, a boat in the middle of the channel headed upstream with the name "Mary" on its starboard bow, and men amidships; that Weaver announced that he was a federal prohibition officer and ordered them to beach the boat; that, upon shots being fired, some one on board said: "Give us a chance;" that thereupon the boat swung to starboard and came toward the shore, and when within 10 yards from them suddenly swung further to starboard and headed down the river to sea; that the officers were within 10 yards of the boat; that, as she headed down the river, they saw the name "Mary" on her port bow and sacks on her deck and some four or five men on board her, among whom they recognized Arthur and Fred Woodard, Jack Speiss, and William Donnell; that, as the boat went down stream, they saw the name "Mary, Boston," on her stern; that Weaver followed the boat down as far as the remains of a railroad bridge where he saw sacks in the water similar to those on shore; that he picked up one of the sacks, which contained Coon Hollow whisky, near the piling of the bridge; that later three sacks of Golden Wedding whisky were recovered from the river; that near the place on the shore where they first observed the Mary they found two dories each containing 25 sacks of liquor; that 100 sacks were found on the shore and 414 sacks on the truck; that in all they found and seized 567 sacks; that word was communicated by telephone and otherwise to the Coast Guard officers stationed in the vicinity of the mouth of the Merrimack river notifying them of the landing of the liquor by the Mary at York and of her escape, requesting that they be on the lookout, and to take her if she came that way; that between 2 and 3 o'clock the next morning the Mary was found by a Coast Guard picket boat approaching the mouth of the Merrimack river, where she was stopped and detained; that she then had on board Arthur and Fred Woodard, Jack Speiss, William Donnell, and another man; that on that afternoon the Mary and the men were taken to Boston and turned over to the customs officers, where the Mary was formally seized and the men arrested; that the beam light which the officers had at York was a powerful one, and would throw a light the distance of 600 yards or better; that the Mary, when first seen at the York river, had no dories or fishing tackle on board, and had none when overtaken and held up at the mouth of the Merrimack river; that the whisky seized contained 50.2 per cent. of alcohol, and was a Canadian type of whisky suitable for beverage purposes; that the brand marked "Golden Wedding Whiskey" bore a Canadian export stamp, which was the same as one put in evidence and obtained at

the Distillery Corporation, Limited, in Canada; that the wrapper containing this brand was a water marked wrapper which a witness identified as being the same as the water marked wrappers used by the Distillery Corporation, Limited, of Canada, which he had examined at the distillery; that the liquor seized was of the value of $14,175; and that the collector of customs at Portland having charge of issuing permits to unlade and special licenses to unlade at night had issued no permits or licenses to the Mary to unlade on the night of November 4 and 5.

The District Court found that the boat seen on the night of November 4 and 5 at York was the identical boat overtaken and detained at the mouth of the Merrimack river. There was abundant evidence in support of this finding, and it is sustained. The appellant takes nothing by his first assignment.

The next assignment relates to the admission of testimony given by McKenna, a customs agent, as to the origin of the liquor. There is no basis for this alleged error, for no exception was taken to McKenna's testimony or to any other testimony that was put in evidence. But, apart from this, there was evidence justifying the finding that the liquor was of foreign origin, and that it exceeded in value $500, as the District Court found, which findings are approved. The sufficiency of the evidence to establish the origin of the liquor was dealt with by this court in Rich v. United States, 62 F.(2d) 638, decided January 10, 1933, and needs no further comment here.

The remaining assignments of error are: (1) Whether there was evidence from which it could be found that the Mary, at the time she was in fact seized by the Coast Guard at the mouth of the Merrimack river and taken into custody by them, was violating her license (the first alleged ground of forfeiture under section 4377), and, if not, whether her seizure was lawful. We are of the opinion, and find, that the Mary at the time she was seized was then engaged in an unlawful occupation in violation of her license, as she was then being pursued for such violation, and had not at that time completed the voyage for which the unlawful undertaking was had. It is therefore unnecessary to determine whether the provisions of section 4377, in the particular here in question, do or do not condition the right of seizure upon the vessel being at the time of seizure engaged in an unlawful occupation in violation of her license.

And, viewing the question from the standpoint of the second ground of forfeiture under sections 450 and 453 of the Tariff Act of 1930, which are the same as those of the Tariff Act of 1922, this court held in United States v. Blackwood, 47 F.(2d) 849, 850, 851, that these sections do not condition the seizure of a vessel on its being at the time engaged in committing the offense, and that under them a vessel can be seized after the offense is committed.

The facts in the case now before us show that at the time of the seizure these provisions of law had been violated by the Mary, for she had unladed merchandise (the liquor) arriving from a foreign port, at night, without a special license or permit.

The decree of the District Court is affirmed.

MORTON, Circuit Judge, concurs in the result.